# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

SARA ANN HALE,

    Plaintiff,

  v.

FRANK BISIGNANO,
Commissioner of Social Security[1],

    Defendant.

_____/

Case No. 1:25-cv-00184-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.   INTRODUCTION

Plaintiff Sara Ann Hale ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   FACTUAL BACKGROUND

On November 10, 2021, Plaintiff protectively filed a claim for DIB payments, alleging she

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 8.)

1  became disabled on May 15, 2021, due to the effects of prior cancer treatment, chronic pain, chronic
2  pancreatitis, chronic GI problems, chronic kidney stones, anxiety, and migraines. (Administrative
3  Record ("AR") 19, 24, 66, 67, 83, 84, 85, 208, 230, 238, 296, 306.)

4  Plaintiff was born in 1982 and was 38 years old on the alleged disability onset date. (AR 28,
5  66, 83, 238, 296, 306.) She has a high school education and previously worked as a home attendant.
6  (AR 27, 28, 59, 231, 250.)

**A.     Relevant Evidence of Record[3]**

In December 2020, Plaintiff presented to Nandeesh Veerappa, M.D., complaining of "shooting" abdominal pain. (AR 621–22.) She reported that she was "unable to run and chase after her daughter at this time." (AR 621.) Dr. Veerappa assessed Plaintiff with unspecified abdominal pain and chronic pancreatitis and administered Toradol and Phenergan injections. (AR 622.)

Plaintiff presented to Dr. Veerappa in November 2021 complaining of worsening chronic pancreatitis pain. (AR 654–55.) She was assessed with chronic pain syndrome, chronic pancreatitis, and noted that pancreatitis pain "can be very severe and continuous, but is more often intermittent and occurs in attacks." (AR 655.)

In October 2022, Plaintiff complained of neck pain. (AR 820–21.) On examination, Plaintiff had decreased range of motion in her cervical spine in all directions, and palpable tenderness at C7 and the right trapezius muscle. (AR 821.) That next month, Plaintiff complained of radiating back pain. (AR 835–36.) Plaintiff's examination showed tenderness in her cervical, thoracic, and lumbar spine. (AR 835.)

In December 2022, Dr. Veerappa opined that Plaintiff could occasionally lift no more than 10 pounds in an eight-hour day. (AR 831.) She could sit, stand, and walk for 20-30 minutes at a time and for three hours in an eight-hour day, and would need to lie down the remainder of an eight-hour day. (AR 831). Dr. Veerappa further opined that Plaintiff was likely to be absent from work on 12–16 days out of every 28 days (4 weeks). (AR 832.) The "objective findings" upon which Dr. Veerappa based her opinion was Plaintiff's "medical history along with multiple surgeries." (AR

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

831.)

Plaintiff presented with neck and low back pain in January 2023. (AR 840–41.) On examination of her lower back, Plaintiff demonstrated positive Straight Leg Raise test bilaterally, limited range of motion, and abnormal sensory exam. (AR 840.) Examination of Plaintiff's cervical spine showed limited range of motion, and abnormal reflexes and sensation. (AR 840.) A chiropractic adjustment was administered. (AR 841.)

**B.     Plaintiff's Husband's Statement**

Plaintiff's husband completed a Third-Party Adult Function Report in January 2022. (AR 267–77.) He stated that Plaintiff's impairments affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. (AR 275.) He reported that Plaintiff cared for her four-year-old daughter with his help and the help of Plaintiff's mother. (AR 268.) According to her husband, Plaintiff mostly cared for her personal needs, but he sometimes had to help her with dressing and bathing. (AR 268.) She made "easy" meals, clean and do laundry. (AR 269.)

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on February 11, 2022, and again on reconsideration on January 23, 2023. (AR 17, 100–104, 118–22.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 142–75.) At the hearing on December 14, 2023, Plaintiff appeared with counsel by telephone and testified before an ALJ as to her alleged disabling conditions. (AR 39–58.) A Vocational Expert ("VE") also testified at the hearing. (AR 59–64.)

Plaintiff testified that she is still experiencing post-pancreatic-cancer complications such as abdominal and rectal pain, bowel issues that necessitate going to the bathroom a minimum of four times per day, and nausea. (AR 44, 53.) She also experiences migraines at least three times per month, as well as low back and neck pain. (AR 45, 47.) Plaintiff shops for groceries online. (AR 48.) Plaintiff testified that her six-year-old daughter is homeschooled on the computer using a videoconferencing application from 8:45am to 12:00 pm, and Plaintiff sets her schedule and checks over her assignments before she submits them. (AR 49.) Plaintiff's mom also helps with the

1  homeschooling.  (AR 49.)  Plaintiff testified that "on a good day" she will attempt to do chores
2  around the house, but she must take breaks and sometimes does not finish.  (AR 51–52.)  She cooks
3  basic meals, but most of the time her mother helps her.  (AR 52.)  Plaintiff testified that she drops
4  dishes due to numbness in her hands.  (AR 56–57.)

**D.    The ALJ's Decision**

In a decision dated March 22, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 17–29.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 19–29.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2024, and she had not engaged in substantial gainful activity since May 15, 2021, the alleged onset date (step one).  (AR 20.)  At step two, the ALJ found Plaintiff's following impairments to be severe: pancreatic cancer in remission; pancreatic insufficiency; rectocele with repair in August 2021; cervical spine degenerative disc disease; lumbar spine degenerative disc disease; and migraines.  (AR 20–22.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 22–23.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except she is limited to lifting and carrying 10 pounds frequently and 10 pounds occasionally; she can sit for 6 hours in an 8-hour workday, but after 30 minutes of sitting, she needs to be able to stand for 3 mins while remaining on task; she can stand and walk for 6 hours, but after 30 minutes of standing or walking, she needs to be able to sit for 3 minutes, while remaining on task.  She can frequently climb stairs, ramps, ladders,

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

>ropes, and scaffolds; she can frequently balance as defined in the Selected Characteristics of Occupations (SCO); she can frequently stoop, kneel, crouch, and crawl; she needs to avoid work environments with more than moderate levels of noise, as defined in the SCO; she needs to avoid work environments with extreme heat, cold, or wetness; and she can have no more than occasional exposure to workplace hazards, such as unprotected heights or moving machinery.

(AR 27–33.) Although the ALJ recognized that Plaintiff's impairments "could have reasonably been expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (AR 24.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 27–29.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 59–63.) The VE testified that a person with the RFC specified above could perform the jobs of cafeteria attendant, storage rental clerk, and mail clerk. (AR 59–62.) The ALJ ultimately concluded Plaintiff was not disabled at any time from May 15, 2021, through March 22, 2024, the date of the decision. (AR 29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 23, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's

conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ failed to articulate clear and convincing reasons for rejecting her subjective-symptom testimony. Plaintiff also contends the ALJ erred in the consideration of the persuasiveness of treating physician Dr. Veerappa's opinion, and did not resolve an apparent inconsistency between the DOT and the VE's testimony. (Docs. 10, 14.)

The Commissioner contends that substantial evidence supports the ALJ's evaluation of

Plaintiff's symptoms, the ALJ properly considered Dr. Veerappa's opinion, and the VE's testimony does not conflict with the DOT.[5]  (Doc. 13.)

Because further proceedings are required regarding the opinion of Dr. Veerappa, the Court does not reach the other allegations of error.[6]

**A.     Legal Standard**

Plaintiff's claim for DIB is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the

---

[5] The Court observes that Defendant's responsive brief was filed four days after the date agreed to by the parties. (*Compare* Doc. 12 *with* Doc. 13.)  In the absence of any apparent prejudice, the Court shall permit the late filing. Defendant is cautioned that any future failures to comply with this Court's deadlines will be looked upon with disfavor.
[6] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

8

decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Veerappa's opinion.

**B.     Analysis**

The ALJ determined that Dr. Veerappa's opinion was "partially persuasive" overall, but the

1  "total sit and stand/walk limitations in an eight-hour day were not supported by the normal physical
2  examination findings in the record" and the "specific finding that she would [] miss 12-16 days per
3  month due to her impairments is not persuasive, as it is not supported by Dr. Veerappa's objective
4  findings, and it is not consistent with [Plaintiff's] activities, such as homeschooling her own
5  daughter, and performing chores and cooking in her house, as described in the third party function
6  report and in the hearing testimony."  (AR 27.)

       The Court concludes that the ALJ's evaluation of Dr. Veerappa's opinion is deficient because the ALJ did not adequately discuss the supportability and consistency factors and failed to articulate an explanation that is supported by substantial evidence. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). Although "the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." *Shannon B. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:21-cv-01144-HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence), and *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").)

       With respect to the supportability factor, the ALJ summarily found that the "total sit and stand/walk limitations" (*i.e.*, limited to sitting, standing, and walking for 20-30 minutes at a time for three hours in an eight-hour day) and the absenteeism limitation (*i.e.*, absent 12-16 days per month) opined by Dr. Veerappa were not supported by "the normal physical examination findings in the record" and by "Dr. Veerappa's objective findings," respectively. (AR 27.) But the ALJ did not identify or discuss what "normal physical findings" in the record or "objective findings" by Dr. Veerappa on which they relied in determining those limitations were not supported. More importantly, the extent to which Dr. Veerappa's findings (both before and during the relevant

10

period) actually support the limitations, including her assessments of Plaintiff's unspecified abdominal pain, chronic pain syndrome, and chronic pancreatitis, specifically noting that pancreatitis pain "can be very severe and continuous, but is more often intermittent and occurs in attacks."[7] (AR 655. *See also* AR 622.)  By omitting any explanation as to as to how Dr. Veerappa's own findings or the other physical findings in the record do not support the opined limitations, the Court concludes that the ALJ's supportability analysis lacks substantial evidence. *See Schmitzer v. O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024) (finding error in the supportability discussion where "the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations identified in" the opinions and "failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions."); *Katherine D. v. Comm'r, Soc. Sec. Admin.,* No. 6:20-CV-1920-MO, 2024 WL 244625, at *6 (D. Or. Jan. 23, 2024) ("Regarding 'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions."); *Ann M. v. Kijakazi,* No. 2:23-CV-01081-MAA, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support"); *see also Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *8 (S.D. Cal. Mar. 5, 2024) ("[M]erely noting that [an] opinion is 'unsupported by the objective evidence' without any citations to [] treatment notes is insufficient" consideration of the supportability factor.).  Moreover, because error in the treatment of a medical opinion impacts the RFC determination, the Court declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

The ALJ's evaluation of the consistency factor is equally deficient.  An ALJ may not cherry-

---

[7] While it is unclear to which "normal" physical examination findings the ALJ refers, the Court observes that several of Plaintiff's examination findings in the record are markedly ***ab***normal. (*See, e.g*., AR 821 (October 2022: decreased range of motion in cervical spine in all directions and palpable tenderness at C7 and the right trapezius muscle); AR 835 (November 2022: tenderness in her cervical, thoracic, and lumbar spine); AR 840 (January 2023: positive Straight Leg Raise test bilaterally, limited range of motion in lower back, abnormal sensory exam, limited range of motion in cervical spine, and abnormal reflexes.).)

11

pick evidence in evaluating a medical opinion. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits). The ALJ found that Dr. Veerappa's absenteeism limitation is "not consistent with [Plaintiff's] activities, such as homeschooling her own daughter, and performing chores and cooking in her house, as described in the third party function report and in the hearing testimony."[8] (AR 27.) In so doing, the ALJ isolated portions of the third-party report and testimony that the ALJ concluded undermined Dr. Veerappa's absenteeism limitation, but improperly ignored the other statements and testimony indicating that Plaintiff could not perform any of the activities identified for a substantial part of each day. For example, while Plaintiff testified she sets her daughter's homeschooling schedule and checks over her assignments, she also testified that the homeschooling session is conducted (1) using a videoconferencing application on a computer, (2) for only 3 hours and 15 minutes per day, and (3) with the assistance of Plaintiff's mother. (AR 49.)

Regarding the "chores and cooking" performed, the ALJ did not consider the full context of these reported activities (particularly in view of Dr. Veerappa's observation of the intermittent nature of Plaintiff's symptoms (*see* AR 655).) Accompanying statements and testimony were overlooked showing that due to Plaintiff's pain and bowel issues, she could perform some chores and cook only with assistance, frequent breaks, or to a limited extent. (*See* AR 51–52 ("on a good day" will attempt to do chores around the house but must take breaks and sometimes does not finish); AR 55, 269 (can make "easy" and "basic" meals with help from her mother).)

---

[8] The ALJ's discussion of Dr. Veerappa's opined "total sit and stand/walk limitations" appears directed solely to the supportability factor and does not discuss the consistency factor. District courts in the Ninth Circuit have frequently found error when the ALJ fails to articulate how they considered both the supportability and consistency as required under the regulations and Ninth Circuit case law. *See Hiten v. Kijakazi*, No. 1:22-cv-00473-JLT-BAM, 2023 WL 5806452, at *5–6 (E.D. Cal. Sept. 7, 2023) (collecting cases noting the ALJ must explain how both supportability and consistency factors were considered in determining the persuasiveness of an opinion.).

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 404.1520c(b)(2). Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and therefore the Court declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

Moreover, while Defendant attempts to provide reasons why the ALJ could have found that the "total sit and stand/walk" and absenteeism limitations opined by Dr. Veerappa were not supported by or consistent with her own findings or the other physical findings in the record (*see* Doc. 13 at 11–12), this is the sort of post hoc rationale that is impermissible in the Social Security context. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ himself); *see also Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner

specifically addresses the supportability and consistency factors and provides citations to the record.  Unfortunately these are *ad hoc* rationales the Court cannot consider").

**C.     Harmless Error Analysis**

The error of the ALJ's analysis of the persuasiveness of Dr. Veerappa's "total sit and stand/walk" and absenteeism limitations is not harmless.  Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Here, the hearing testimony is that Dr. Veerappa's "total sit and stand/walk limitations" would preclude all work.  (AR 62–63.)  The Court therefore cannot "confidently conclude" that "no reasonable ALJ" considering Dr. Veerappa's opined limitations could have reached a different disability determination. *See Carter v. Comm'r of Soc. Sec.*, No. 2:24-CV-01177-DGE, 2025 WL 747429, at *10 (W.D. Wash. Mar. 10, 2025) ("These errors were not harmless, as they impacted the RFC formulated by the ALJ.  If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.") (internal citations omitted); *David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *see also Suzi Marie H.*, 2024 WL 965233, at *14 (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D.     Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds, and Plaintiff agrees (*see* Doc. 14 at 6), that remand for additional

proceedings is necessary because the persuasiveness of the discounted limitations opined by Dr. Veerappa must be analyzed further before a determination of disability may be made.[9]  *See* 20 C.F.R. § 404.1520c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was inconsistent with other objective medical evidence); *Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Sara Ann Hale against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 3, 2025**                  /s/ *Sheila K. Oberto*                  .
                                                UNITED STATES MAGISTRATE JUDGE

---

[9] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the limitations.  Nor does the Court express what Plaintiff's RFC ultimately should be.  These are for the ALJ to decide.  *Ford*, 950 F.3d at 1154.

15